(Slip Opinion)

# Exclusion of Agency Counsel from Congressional Depositions in the Impeachment Context

Congressional committees participating in an impeachment inquiry may not validly compel executive branch witnesses to testify about matters that potentially involve information protected by executive privilege without the assistance of agency counsel. Congressional subpoenas that purport to require executive branch witnesses to appear without agency counsel in these circumstances are legally invalid and are not subject to civil or criminal enforcement.

November 1, 2019

LETTER OPINION FOR THE COUNSEL TO THE PRESIDENT

On October 31, 2019, the House of Representatives voted to authorize certain committees to investigate "whether sufficient grounds exist for the House of Representatives to exercise its Constitutional power to impeach" President Trump. H.R. Res. 660, 116th Cong. (2019). Although the House resolution directs the House Permanent Select Committee on Intelligence ("HPSCI") to conduct "open and transparent investigative proceedings" in connection with this inquiry, *id.* § 2 (title), we understand that HPSCI nonetheless insists that executive branch employees appear next week for closed-door depositions from which agency counsel would be excluded.

You have asked whether HPSCI or the other committees involved in the impeachment inquiry may validly compel executive branch witnesses to appear at such depositions. The HPSCI impeachment inquiry seeks information concerning presidential communications, internal executive branch deliberations, and diplomatic communications arising in connection with U.S. foreign relations with Ukraine. As a result, the depositions seek testimony from executive branch employees concerning matters potentially protected by executive privilege. Consistent with our prior advice, we conclude that the congressional committees participating in the impeachment investigation authorized by the resolution may not validly require executive branch witnesses to appear without the assistance of agency counsel in connection with such depositions. *See Attempted Exclusion of Agency Counsel from Congressional Depositions of Agency Employees*, 43 Op. O.L.C. __, *7–13 (May 23, 2019) ("*Exclusion of Agency Counsel*"). HPSCI could address this separation of powers problem by allowing agency counsel to assist the employee during the deposition. Should the committee not do so, however, a subpoena purporting to

1

require a witness to appear without such assistance would be invalid and not subject to civil or criminal enforcement. *See id.* at \*13–14.

We have previously advised, in the context of legislative oversight investigations, that Congress may not prohibit agency counsel from accompanying employees called to testify about matters that potentially involve information protected by executive privilege. As we explained, "the exclusion of agency counsel impairs the President's ability to exercise his constitutional authority to control privileged information of the Executive Branch" and "his constitutional authority to supervise the Executive Branch's interactions with Congress." *Id.* at \*8. The President has the constitutional authority to protect privileged information from disclosure in response to congressional investigations, and to do so effectively, he must be able to designate a representative to protect this interest at congressional depositions. *Id.* at \*8–11. In addition, the President has the constitutional authority to control the activities of subordinate officials within the Executive Branch, which includes the power to control communications with, and information provided to, Congress on the Executive Branch's behalf. *Id.* at \*11–13. Adherence to these principles ensures that executive branch employees called to testify before Congress do not improperly disclose privileged information, and that the information provided is consistent with the scope of Congress's investigative authority.

We believe that these same principles apply to a congressional committee's effort to compel the testimony of an executive branch official in an impeachment inquiry. Executive privilege protects the confidentiality and integrity of sensitive executive branch information absent a showing of sufficient legislative "need" in the context of an oversight investigation. *Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 498 F.2d 725, 730–31 (D.C. Cir. 1974) (en banc). The privilege has also been recognized to protect information in connection with other kinds of proceedings, including criminal trials and grand-jury investigations.

As the Supreme Court recognized in *United States v. Nixon*, 418 U.S. 683 (1974), executive privilege "is fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *Id.* at 708. While the privilege may yield to the "legitimate needs of the judicial process" in connection with a criminal trial, the Court recognized that "it is necessary to resolve those competing interests

in a manner that preserves the essential functions of each branch." *Id.* at 707. The D.C. Circuit has applied the same principle in connection with a grand-jury investigation, observing that privileged presidential communications "should not be treated as just another source of information" in such an inquiry, but should instead be provided to a grand jury only upon a demonstration of "why it is likely that evidence contained in presidential communications is important to the ongoing grand jury investigation and why this evidence is not available from another source." *In re Sealed Case*, 121 F.3d 729, 755–57 (D.C. Cir. 1997).

We believe that a congressional committee must likewise make a showing of need that is sufficient to overcome the privilege in connection with an impeachment inquiry. Although no judicial decision is directly on point, the D.C. Circuit suggested as much in *Senate Select Committee*, in which it contrasted the Senate committee's "oversight need" in support of "legislative tasks" with "the responsibility of a grand jury, *or any institution engaged in like functions*." 498 F.2d at 732 (emphasis added). The latter phrase referred to the House Committee on the Judiciary, which had "begun an inquiry into presidential impeachment." *Id.* The D.C. Circuit's recognition that an impeachment inquiry is similar to a grand-jury investigation implies the requirement of a similar showing of need. We need not settle on the precise standard in order to address your current inquiry, because we think it sufficient to recognize that a qualified executive privilege remains available, and a congressional committee must therefore make some showing of need to overcome the privilege. This conclusion follows from the Supreme Court's recognition that a dispute involving information subject to executive privilege should be resolved in a manner that "preserves the essential functions of each branch." *Nixon*, 418 U.S. at 707.[1]

---

[1] In a 1974 effort to summarize the then-available precedents, a "working paper prepared by the staff" of this Office observed that "[p]recedents relating to the subject of executive privilege in presidential impeachment are meager, confused and inconclusive." Office of Legal Counsel, U.S. Dep't of Justice, *Legal Aspects of Impeachment: An Overview* app. 3, at 1 (Feb. 1974). Where executive branch officials have addressed the issue, they have typically done so outside the context of a particular impeachment inquiry. While they have sometimes acknowledged that Congress's interest in information in connection with impeachment may be stronger than in the oversight context, they have not identified a consistent standard for evaluating such requests. *See id.* at 6–15, 22–32 (describing statements of past Presidents and Attorneys General); *see also, e.g.*, *Assertion*

While HPSCI may be able to establish an interest justifying its requests for information, the Executive Branch also has legitimate interests in confidentiality, and the resolution of these competing interests requires a careful balancing of each branch's need in the context of the particular information sought. *See United States v. Am. Tel. & Tel. Co.*, 567 F.2d 121, 127 (D.C. Cir. 1977) ("[E]ach branch should take cognizance of an implicit constitutional mandate to seek optimal accommodation through a realistic evaluation of the needs of the conflicting branches in the particular fact situation."). Although HPSCI is willing to allow witnesses to appear with *personal* counsel, the accommodation process presupposes participation by appropriate representatives of the Executive Branch, which cannot occur when a committee seeks to exclude *agency* counsel from the room. *See Exclusion of Agency Counsel*, 43 Op. O.L.C. at *17 (explaining the differences between private counsel's and agency counsel's obligations and abilities). Accordingly, where, as here, a committee deposition is likely to inquire into privileged communications, the committee may not validly prevent an executive branch witness from receiving the assistance of agency counsel. *See id.* at *7–13.

Because the committee may not bar agency counsel from assisting an executive branch witness without contravening the legitimate prerogatives of the Executive Branch, a HPSCI subpoena requiring such a result would exceed the committee's lawful authority and thus could not be enforced. As we concluded in the oversight context, "it would be unconstitutional to enforce a subpoena against an agency employee who declined to appear before Congress, at the agency's direction, because the committee would not permit an agency representative to accompany him." *Id.* at *14. This conclusion followed from many earlier precedents of this Office, which recognized that "the Constitution does not permit Congress to make it a crime for an official to assist the President in asserting a constitutional

*of Executive Privilege by the Chairman of the Atomic Energy Commission*, 1 Op. O.L.C. Supp. 468, 485 (1956) ("Even in [impeachment] there is no precedent to the effect that the executive privilege cannot validly be invoked."); *Position of the Executive Department Regarding Investigative Reports*, 40 Op. Att'y Gen. 45, 51 (1941) (identifying impeachment proceedings as a situation in which "the public interest" can justify disclosure of "pertinent" information "for the good of the administration of justice"). Subsequent judicial decisions, as discussed above, are consistent with our recognition that a qualified privilege applies in the context of an impeachment investigation, just as it does in a grand-jury investigation.

privilege that is an integral part of the President's responsibilities under the Constitution." *Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101, 140 (1984).[2] An executive branch employee does not violate the criminal contempt-of-Congress statute by declining to appear before a congressional committee based upon an instruction to protect the confidentiality interests of the Executive Branch and the separation of powers. HPSCI, of course, may readily avoid this problem by allowing the employee to receive the assistance of agency counsel during the deposition.

You have also asked whether the House's adoption of a resolution authorizing an impeachment inquiry would have any effect on existing subpoenas. As we have previously advised you, prior to October 31, 2019, the House had not vested any committee in the current Congress with the authority to issue subpoenas in connection with an impeachment inquiry. As a result, subpoenas issued before that date purporting to be "pursuant to" an impeachment inquiry were not properly authorized. Although House Resolution 660 "direct[s]" HPSCI and other committees to "continue their ongoing investigations," it does not purport to ratify any previously issued subpoena. Accordingly, while the Executive Branch may, and regularly does, accommodate congressional requests for information in the absence of a subpoena, the relevant committees would have to issue new subpoenas to impose any compulsory effect on recipients.

STEVEN A. ENGEL
*Assistant Attorney General*
*Office of Legal Counsel*

---

[2] *See also Testimonial Immunity Before Congress of the Former Counsel to the President*, 43 Op. O.L.C. __, *20 (May 20, 2019) ("The constitutional separation of powers bars Congress from exercising its inherent contempt power in the face of a presidential assertion of executive privilege."); *Whether the Department of Justice May Prosecute White House Officials for Contempt of Congress*, 32 Op. O.L.C. 65, 65–69 (2008) (concluding that the Department cannot take "prosecutorial action, with respect to current or former White House officials who . . . declined to appear to testify, in response to subpoenas from a congressional committee, based on the President's assertion of executive privilege"); *Application of 28 U.S.C. § 458 to Presidential Appointments of Federal Judges*, 19 Op. O.L.C. 350, 356 (1995) ("the criminal contempt of Congress statute does not apply to the President or presidential subordinates who assert executive privilege").